UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

MACKING NETTLES, JR.,

                Plaintiff,

v.

UNKNOWN TREMBLAY,

                Defendant.

_____/

Case No. 2:20-cv-163

Honorable Robert J. Jonker

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.       Factual allegations**

Plaintiff presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan.

The events about which he complains occurred at that facility.  Plaintiff sues Correctional Officer Unknown Tremblay.

Plaintiff alleges that, while working his prison job in the kitchen on January 28, 2020, at approximately 7:30 a.m., he suffered a sudden spasm of severe pain that shot across his back, nearly causing him to drop to his knees.  By noon, Plaintiff's back pain had become so debilitating that he could not stand or walk without excruciating pain.  Plaintiff asked his supervisor to permit him to leave work early, which he did.  Plaintiff slowly and carefully walked back to his unit, but he was hit by a sudden spasm that caused him to drop to the ground.  Another prisoner helped him back to his feet, and Plaintiff eventually made it to his cell, where he immediately laid down.

By the following morning, at approximately 5:30 a.m., Plaintiff's pain was so terrible that he could not move, roll over, raise himself, or sit up without experiencing excruciating pain.  With the assistance of another inmate, Plaintiff was able to get out of bed.  With much difficulty, Plaintiff walked to the front desk and asked the third-shift officer to call health care.  The officer refused, indicating that shift change was approaching and that Plaintiff would need to ask first-shift staff, when they arrived.  The officer also refused to call the kitchen to obtain authorization for Plaintiff not to report to work.

Because Plaintiff knew that he would receive a misconduct ticket if he did not report to work, Plaintiff walked slowly, across snowy ground, to get to the kitchen.  Once there, Plaintiff asked his supervisor for a day off due to his physical condition.  Plaintiff also asked his supervisor for a written statement.  The supervisor, seeing Plaintiff's condition, granted the day off and provided the statement.  The supervisor also told Plaintiff that she would have Plaintiff's

breakfast tray brought to his cell, as he was in no condition to walk over again when mealtime arrived.

Plaintiff managed to walk back to his cell without falling, and, at about 6:40 a.m., he made his way back to the front desk, where Defendant Tremblay was stationed. Plaintiff asked Defendant Tremblay to call health care. Tremblay made the call and told Plaintiff that he would be seen in health care at 10:00 a.m. Plaintiff then asked Defendant Tremblay to call food service about having Plaintiff's breakfast delivered, as he was in no condition to walk to the mess hall. Defendant Twemblay refused, despite being informed that Plaintiff was unable to walk the 100 yards to the mess hall and stand in line. Tremblay told Plaintiff to "toughen it out and walk." (Compl., ECF No. 9, PageID.9.) Plaintiff stated that any attempt to walk could cause him to collapse and fall again, because of the pain. Tremblay again refused and repeated, "[T]oughen up and walk." (*Id.*) Plaintiff alleges that he was very hungry, as he had not eaten in over 24 hours. Plaintiff did not get breakfast, because he could not walk to the mess hall.

At 10:00 a.m., another prisoner acquired a wheelchair to transport Plaintiff to health care. Plaintiff nearly fell getting into the wheelchair. At health services, a nurse examined Plaintiff. Although the nurse could not say precisely what caused Plaintiff's back pain, she issued two types of pain medication, Cedaprin (ibuprofen) and Aypanal (acetaminophen), and a hot water bottle. The nurse instructed Plaintiff to attempt to move around the unit a little but to not go outside, due to his risk of falling on the slippery ground. The nurse also issued orders indicating that he was unable to work for two days, and she scheduled a follow-up appointment two days later. At the two-day checkup, Plaintiff was cleared for work, though he was advised to take it easy.

Plaintiff alleges that Defendant Tremblay's refusal to request that a food tray be delivered to Plaintiff on January 29, 2020, amounted to deliberate indifference to Plaintiff's serious medical needs, in violation of the Eighth Amendment.

Plaintiff seeks compensatory and punitive damages.

## II.      Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III.     Eighth Amendment

Plaintiff alleges that Defendant Tremblay was deliberately indifferent to his serious medical needs. Plaintiff acknowledges, however, that Tremblay called health care when Plaintiff asked. Defendant Tremblay merely refused Plaintiff's request to call food services to obtain a breakfast tray for Plaintiff. Tremblay also allegedly was verbally dismissive of the seriousness of Plaintiff's pain, telling Plaintiff to walk to food services.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35-37.  To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.  Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837.  "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.  "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.  "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).

"[T]he Eighth Amendment imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoners receive adequate . . . food." *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 832).  However, the Constitution "does not mandate comfortable

6

prisons." *Rhodes*, 452 U.S. at 349. "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, being deprived of a working toilet, or missing a meal do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). Thus, the deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation. *See Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (denial of seven meals over six consecutive days did not state a viable Eighth Amendment claim, because plaintiff did not allege that his health suffered from denials); *see also Berry v. Brady*, 192 F.3d 504, 507-08 (5th Cir. 1999) (denial of a few meals over several months does not state a claim); *Staten v. Terhune*, No. 01-17355, 2003 WL 21436162, at *1 (9th Cir. June 16, 2003) (deprivation of two meals is not sufficiently serious to form the basis of an Eighth Amendment claim); *Cagle v. Perry*, No. 9:04-CV-1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (deprivation of two meals is "not sufficiently numerous, prolonged or severe" to give rise to an Eighth Amendment claim).

In the instant case, Plaintiff does not allege that his health suffered as a result of the deprivation. Indeed, although Plaintiff alleges that he did not eat for more than 24 hours, he does not allege that Defendant was responsible for depriving him of more than a single meal. And

7

Plaintiff's only claim of injury is that he suffered hunger for a few hours between the time for breakfast and lunch.  Consequently, Plaintiff does not state a plausible claim.  *See Iqbal*, 556 U.S. at 679.

Further, to the extent that Plaintiff alleges that Defendant Tremblay's statements were callous and dismissive, he fails to state an Eighth Amendment claim.  The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions.  *See Ivey*, 832 F.2d at 954-55; *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.").  Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendant Tremblay arising from his alleged verbal abuse.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:    September 23, 2020          /s/ Robert J. Jonker
                                      ROBERT J. JONKER
                                      CHIEF UNITED STATES DISTRICT JUDGE